John N. Zarian, ISB No. 7390
Kennedy K. Luvai, ISB No. 8824
PARSONS BEHLE & LATIMER
800 W. Main Street, Suite 1300
Boise, ID  83702
Telephone:  (208) 562-4900
Facsimile:  (208) 562-4901
Email: jzarian@parsonsbehle.com
         kluvai@parsonsbehle.com

Attorneys for Plaintiff
Supertanks, LLC dba Titan Fuel Tanks

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| SUPERTANKS, LLC dba TITAN FUEL TANKS, an Idaho limited liability company,<br><br>                    Plaintiff,<br><br>v.<br><br>TUFF TANKS, LLLP, an Idaho limited liability limited partnership; JON CASEY HOLST, an individual; DENNIS SCOTT HOLST, an individual; and JAMES DONALD TEEGARDEN, an individual,<br><br>                    Defendants. | **COMPLAINT**<br><br>Case No.:<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Supertanks, LLC dba Titan Fuel Tanks complains and alleges as follows:

### NATURE OF ACTION

1.      This is an action for trademark infringement and unfair competition, trade dress infringement and unfair competition, and false advertising under the Lanham Act, and for trademark infringement and unfair competition under Idaho common law.

### PARTIES

2.      Plaintiff Supertanks, LLC is a limited liability company formed under the laws of the state of Idaho and has its principal place of business in Idaho Falls, Idaho, doing business as

COMPLAINT - 1

Titan Fuel Tanks ("Titan").  Founded in 2003, Titan designs, develops, manufactures and sells high-capacity aftermarket fuel tanks.

3.      On information and belief, defendant Tuff Tanks, LLLP is a limited liability limited partnership formed under the laws of the state of Idaho that has or had its principal place of business in Ucon, Idaho, and whose status as a limited partnership stands withdrawn as of December 18, 2015.

4.      On information and belief, Dennis Scott Holst ("Dennis Holst") is an individual residing in Ucon, Idaho, and who is or was an owner, principal and/or officer of Tuff Tanks, LLLP.

5.      On information and belief, Jon Casey Holst ("Jon Holst") is an individual residing in Ucon, Idaho, and who is or was an owner, principal and/or officer of Tuff Tanks, LLLP.

6.      On information and belief, James Donald Teegarden ("Teegarden") is an individual residing in Ucon, Idaho, and who is or was an owner, principal and/or officer of Tuff Tanks, LLLP.

7.      On information and belief, Dennis Holst, Jon Holst and Teegarden (the "Individual Defendants") operate a business or commercial venture that is styled, or otherwise holds itself out to the public, as "Tuff Tanks."  On information and belief, Tuff Tanks is a successor to or affiliate of Tuff Tanks, LLLP.

8.      While Tuff Tanks has held, and continues to hold, itself out as "Tuff Tanks, LLC," there is, on information and belief, no record documenting the filing of a certificate of limited liability company organization or formation, or its equivalent, for "Tuff Tanks, LLC" with relevant state authorities in the United States.  On information and belief, there is no record documenting the filing of business organization documents for Tuff Tanks with relevant state authorities in the United States.

9.      On information and belief, there existed, at all relevant times, a unity of interest between the Individual Defendants, on the one hand, and Tuff Tanks and/or Tuff Tanks, LLLP, on

the other, such that any individuality or separateness between each Individual Defendant, on the one hand, and Tuff Tanks and/or Tuff Tanks, LLLP, on the other hand, ceased because each Individual Defendant is an alter ego of Tuff Tanks and/or Tuff Tanks, LLLP.  On information and belief, adherence to the fiction of separate existence between the Individual Defendants, on the one hand, and Tuff Tanks and/or Tuff Tanks, LLLP, on the other hand, as distinct from each other will permit an abuse of corporate privilege, sanction fraud, and promote injustice.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), because the asserted claims arise under the trademark laws of the United States.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein transpired in this judicial district.

## FACTUAL BACKGROUND

### Titan's Development of Safe High-Capacity Fuel Tanks

12.     Titan was founded in 2003 in response to a critical unmet market demand from diesel pickup truck owners who desired to drive farther and longer between fuel fill-ups, and whose goal of doing so was hampered by the limited capacity of their standard fuel tanks.

13.     The capacity limitations of the original equipment manufacturer (OEM) or standard fuel tanks in a pickup truck become even more pronounced in instances where, for example, the driver tows one of a variety of trailers, either for business or pleasure, thus significantly impacting the truck's fuel economy.

14.     Understanding the market demand and cognizant of the design challenges and limitations, Titan set out to design and develop a lightweight fuel tank that would (a) fit each

vehicle perfectly, (b) not have an impact on valuable cargo space in the truck, (c) provide up to a doubling of the pickup truck's fuel range, and (d) operate without interfering with any functional parts of the pickup truck.

15.     In addition to the foregoing functional considerations and in order to increase the likelihood of widespread adoption in the marketplace, the solution that Titan pursued was designed and intended to have an aesthetic appeal that did not detract from the truck's original look.

16.     During the initial design and development phase, Titan learned of the appealing qualities of the Cross-Linked High-Density Polyethylene (XLHDPE) material and immediately appreciated its potential.  XLHDPE is superior to the Linear Polyethylene used in OEM or standard fuel tanks in that the molecules of the XLHDPE polymer weave more tightly together, hence the description "cross-linked."  In other words, the molecular "chains" that make up the XLHDPE material are chemically bonded together, or "bridged," to form a continuous three-dimensional structure that allows impact energy to be dissipated more efficiently throughout the chain of molecules, thus resulting in superior performance in terms of strength.

17.     Compared to OEM or standard fuel tanks, Titan's fuel tanks provide up to a twentyfold increase in environmental stress crack resistance, up to a tenfold increase in molecular weight, and up to a fivefold increase in impact strength.

18.     XLHDPE material likewise vastly outperforms the various grades of metal used in fuel tanks because, as compared with metal fuel tanks, Titan fuel tanks have a wider range of chemical resistance, have increased impact strength, perform considerably better in extreme temperatures, are better suited for biodiesel applications, limit or eliminate in-tank condensation, and are corrosion-resistant, among other advantages.

19.     The availability of the XLHDPE material allowed Titan to design and develop a stronger, safer and more durable diesel fuel tank.  The strength of Titan's fuel tank design is further

enhanced by Titan's seamless design whereby the body of the fuel tank is in one piece, thus avoiding potential weak points along seams.

20.     Titan's fuel tanks are market leaders not because they are the least expensive options but because of the many advantages they provide over competing tanks, as noted above.

### Titan is a Recognized Innovator in the Industry

21.     Titan continues to actively innovate and introduce products into the marketplace that have been recognized as "firsts" in the industry.  Titan has expanded its product line beyond its underbody replacement tank line to now include a growing number of award-winning products including (a) its unique Spare Tire Auxiliary Fuel System, which adds 30 gallons of additional fuel capacity to most diesel pickup truck models without compromising cargo space, and (b) an in-bed fuel tank system that enhances fuel capacity by anywhere from 15 gallons to 100 gallons.

22.     Titan has been widely recognized as a longtime innovator in aftermarket tank design.  Among its many industry recognitions, Titan received numerous awards at the SEMA Show – the premier automotive specialty products trade show in the world that attracts tens of thousands of domestic and international buyers and features thousands of newly introduced vehicle parts, tools and components.  These awards include (a) a "Show Stopper" award from *Diesel Tech Magazine* at the 2014 SEMA Show for Titan's 15-gallon Sidekick tank; (b) a "Best New Products" award from Truck Trend at the 2013 SEMA Show for Titan's spare tire tank; (c) the "SEMA Best New Merchandising Display 2016, Runner-Up" award from SEMA itself; and (d) nine "SEMA Global Media Awards" over the last three years for various of Titan's new products.

### Titan's Promotion and Distribution of High-Capacity Fuel Tanks

23.     Titan sells its fuel tanks throughout the United States, Canada, Australia and in other areas where American diesel trucks are in use.

COMPLAINT - 5

24.     Titan sells its fuel tanks through an expansive network of more than 1,000 authorized dealers.

25.     Titan also promotes its fuel tanks through its website located at www.titanfueltanks.com, through printed product catalogs and printed product information brochures, and at trade shows and industry events.

26.     In addition, Titan's authorized dealers engage in synergistic promotional and advertising activities aimed at increasing the reach of Titan's brands in their respective markets.

27.     Titan's promotional activities have been successful, and Titan has sold more than 30,000 fuel tanks throughout the United States and elsewhere.

### Titan's Use of Protectable Marks in Sales and Marketing Activities

28.     Titan is the sole and exclusive owner of the TITAN, TITAN FUEL TANK, TITAN TOUGH and TITAN XXL FUEL TANKS marks (the "Titan Marks") used in connection with aftermarket fuel tanks, having used the same in commerce since at least 2006.

29.     As a result of its widespread, continuous and exclusive use of the Titan Marks in United States commerce to identify its aftermarket fuel tanks and Titan as their source, Titan owns valid and subsisting common law rights to the Titan Marks throughout the United States.

30.     Owing to Titan's design, development, manufacture and sale of its cutting-edge aftermarket fuel tanks, the Titan Marks have become well-known within Titan's trade and industry and within the relevant markets.

31.     Titan has invested considerable resources in developing, advertising and using the Titan Marks, and in promoting products that are associated with the marks.  As a result of the foregoing efforts, Titan has established significant goodwill and widespread recognition of the Titan Marks in its trade and industry.  Customers and prospective customers have come to associate the Titan Marks exclusively with Titan's aftermarket fuel tanks.

32.     Titan, through and along with its hundreds of authorized distributors nationwide, sells, markets and promotes its aftermarket fuel tanks under the Titan Marks.

33.     As a result of Titan's expenditures and efforts, the Titan Marks have come to signify the high quality of the aftermarket fuel tanks designated by the Titan Marks and have acquired a high degree of distinction, reputation and goodwill belonging exclusively to Titan.

### Titan's Use of Protectable Trade Dress in Sales and Marketing Activities

34.     Commencing on or about 2011, and continuing without interruption at all times pertinent to this action, Titan has developed, used, marketed and promoted a trade dress design for the extra capacity, midship, underbody replacement fuel tank consisting of a combination of some or all of following design elements which are generally depicted below: (a) non-glossy black color; (b) rounded edges and/or corners; (c) sandblasted textured finish; (d) size and placement of a roller valve; and (e) size and placement of a vent cap  (the "Titan Trade Dress").



35.     Titan has invested considerable resources in developing advertising and using the Titan Trade Dress and in promoting products that incorporate the Titan Trade Dress.

36.     In view of Titan's widespread use of the Titan Trade Dress, it had acquired distinctiveness as of January 2016.

COMPLAINT - 7

37.     Significant segments of consumers likely to purchase Titan's aftermarket fuel tanks identify the Titan Trade Dress with Titan, or with an otherwise single source.

38.     The function of the Titan Trade Dress is to identify Titan as the source of its aftermarket fuel tanks.

39.     As a result of Titan's expenditures and efforts, the Titan Trade Dress has come to signify the high quality of the aftermarket fuel tanks designated by the design, and has acquired a high degree of distinction, reputation and goodwill belonging exclusively to Titan.

**Tuff Tanks' Very Recent Organization**

40.     On information and belief, Tuff Tanks began engaging in the business of manufacturing and/or selling aftermarket fuel tanks in February 2016.

41.     On information and belief, Tuff Tanks suddenly emerged on the scene some 12 years or more after Titan was founded, after Titan had sold more than 30,000 fuel tanks, and well after Titan had spent considerable amounts of time, money and effort in selling and promoting its products, the Titan Marks, and the Titan Trade Dress.

42.     On information and belief, Tuff Tanks has its principal place of business at 3430 East 109 North within the city limits of Ucon, Idaho.

43.     In addition, Tuff Tanks operates a website – http://www.tufftanks.net (the "Tuff Tanks Website") – through which, on information and belief, Tuff Tanks markets and sells aftermarket fuel tanks across the United States.

44.     On information and belief, Tuff Tanks also markets and sells aftermarket fuel tanks through other business ventures that are owned and/or operated by, or associated with, one or more of the Individual Defendants including, without limitation, Holst Truck Parts.

**Tuff Tanks' Pattern of Conduct in Knocking Off Titan's Products**

4820-2807-1470 v8

45.     In August 2015, Teegarden sought at-will employment with Titan, but his application was denied.  On information and belief, Teegarden was and is aware of Titan and its various product offerings in the aftermarket fuel tank trade or industry.

46.     A few months later, in December 2015, Teegarden was observed at a Big 5 store in Ammon, Idaho, examining and taking several pictures of a vehicle featuring a Titan fuel tank.

47.     On information and belief, Teegarden took the pictures of the Titan fuel tank in order to aid Tuff Tanks in the production of knockoffs of Titan's fuel tanks.

48.     On information and belief, Tuff Tanks has and/or has had access to various models, samples, pictures, images and/or representations (perhaps including CAD drawings) of certain of Titan's aftermarket fuel tanks.

49.     As a condition of his employment with Titan, new Titan employees are required to execute Confidentiality and Non-Compete Agreements in which they agree to (a) keep in confidence and trust Titan's confidential information including, but not limited to, Titan's inventions, vendors, products, drawings, prices, manufacturing costs, customer lists, future plans, research and development work, and technical data (the "Titan Confidential Information"); and (b) not directly or indirectly engage in activities in competition with Titan for a period of two years following separation from Titan.

50.     Upon separation from Titan, departing employees reaffirm the promises to keep in confidence and trust all of the Titan Confidential Information that they had access to as employees of Titan.

51.     On information and belief, in February 2016, a pickup truck believed to be owned or operated by a former Titan employee was seen parked at one of the Individual Defendants' other businesses in Ucon, Idaho.  On information and belief, this former employee has communicated with the Holsts concerning the knockoff products being sold by Tuff Tanks.

52.    Further, on information and belief, Tuff Tanks has had access to confidential information that allowed it to source certain components used by Titan Tanks.  For example, Titan spent a very considerable amount of time and effort in sourcing certain components during the development and manufacture of its aftermarket tanks, including the vent cup used in such tanks, which was sourced only after a protracted process that lasted approximately two years.  By comparison, and even though Titan's component lacked any source-identifying marks, Tuff Tanks was able to source and go to market with that same component within a very short time.

### Tuff Tanks' Unlawful, Unfair and/or Deceptive Practices

#### *Misleading Claims Concerning Location of Principal Place of Business*

53.    On information and belief, Tuff Tanks' principal place of business is located at 3430 East 109 North in Ucon, Idaho.

54.    In various promotional materials including in postings on its "Contact Us" page on the Tuff Tanks Website, Tuff Tanks represents to consumers and prospective consumers that its 3430 East 109 North address is located in Idaho Falls, Idaho.  Additionally, in postings and/or entries made on its Facebook page or profile, Tuff Tanks represents that it is located at a different address in "Idaho Falls, Idaho."  In fact, Tuff Tanks is located in Ucon, Idaho.

55.    Since its inception, however, Titan has and continues to have its principal place business in Idaho Falls, Idaho.

56.    On information and belief, Tuff Tanks' misleading representations regarding the location of its principal place of business are intended to cause confusion, mistake, and deception as to an affiliation, connection, or association between Titan and Tuff Tanks.

#### *Unauthorized Copying of Titan Marketing Materials*

57.    Tuff Tanks began to manufacture and/or sell aftermarket fuel tanks only recently, at least 12 years after Titan began doing so and after Titan had sold more than 30,000 aftermarket

fuel tanks.  Nevertheless, Tuff Tanks claims, on its website, to have originated the idea or concept of larger aftermarket fuel tanks for pickup trucks.  Indeed, Tuff Tanks' background "story" is a loose copy of Titan's background story as published on Titan's website at least eight years ago.

58.     Further, in developing its promotion and marketing materials, Tuff Tanks has lifted and copied certain language directly from Titan's website, brochures and catalogs.

59.     In addition, while Titan is the only company in the industry to designate certain of its aftermarket fuel tanks as "XXL," Tuff Tanks elected to designate certain of its knockoff aftermarket fuel tanks with a confusingly similar "XXXL" designation.

60.     On information and belief, Tuff Tanks engaged in the foregoing copying of Titan's marketing content and materials with the intent to cause confusion, mistake, and deception as to an affiliation, connection, or association between Titan and Tuff Tanks.

### Manufacture and Sale of Knockoff High-Capacity Fuel Tanks

61.     On information and belief, at least two of Tuff Tanks' aftermarket fuel tanks are virtually identical to two of Titan's aftermarket fuel tanks for certain Ford pickup trucks, namely, the Ford Crew Cab Short Bed (stock no. 7010211) and the Ford Crew Cab Long Bed (stock no. 7010311), down to the details of certain specific post-construction mold changes.

62.     The foregoing level of correspondence is suggestive of Tuff Tanks' improper or unauthorized access to design data and specifications, such as CAD drawings, and related copying of product specifications and design features of Titan's aftermarket fuel tanks.

63.     The Ford Crew Cab Short Bed and the Ford Crew Cab Long Bed are Titan's best-selling aftermarket fuel tanks.

### False or Misleading Advertising Claims

64.     In promotion materials, Tuff Tanks falsely represents to the consuming public that its knockoff Ford Crew Cab Short Bed aftermarket fuel tank has a capacity of at least 55 gallons.

4820-2807-1470 v8

In fact, Titan's Ford Crew Cab Short Bed aftermarket fuel tank – which Tuff Tanks meticulously copied – has a capacity of approximately 50 gallons.

65.     In other promotion materials, Tuff Tanks falsely represents to the consuming public that its knockoff Ford Crew Cab Long Bed aftermarket fuel tank has a capacity of at least 70 gallons.  In fact, Titan's Ford Crew Cab Long Bed aftermarket fuel tank – which Tuff Tanks meticulously copied – has a capacity of approximately 65 gallons.

66.     To the extent the supposed increase in capacity of the knockoff Tuff Tanks' aftermarket fuel tank (as compared to the corresponding Titan aftermarket fuel tank) can be explained by a flat bottom surface on the knockoff tanks, any such representations are nevertheless misleading because the "extra" capacity may be unusable when, for example, the vehicle is on an incline with a partially filled tank.

67.     On information and belief, Tuff Tanks' knockoff aftermarket fuel tanks are of considerably lower quality and not as engineered for durability and safety as are Titan's aftermarket fuel tanks.  On information and belief, while Titan's aftermarket fuel tanks are carefully engineered for maximum strength so as to withstand catastrophic events like automobile accidents, Tuff Tanks' knockoff aftermarket fuel tanks appear to be comparatively weak.

### *Unauthorized Use of Titan's Marks in Keyword Advertising*

68.     In February 2016, Titan became aware of Tuff Tanks' unauthorized uses of the Titan Marks in connection with Tuff Tanks' marketing and promotional activities on the Internet.

69.     On information and belief, Tuff Tanks improperly bid and used the Titan Marks on Google, Inc.'s ("Google") Adwords service ("Adwords") with the apparent wrongful motive to confuse consumers and pass off its knockoff fuel tanks.  Additionally, on information and belief, Tuff Tanks has bid and used, on Adwords, various other terms and identifiers that are closely

related with Titan, including, for example, product names and product numbers designating some of its more popular fuel tanks, with the same apparent wrongful motive.

70.     On information and belief, Internet search engines, such as Google's popular engine, allow users to locate websites that correspond with entered "keywords," or search terms resulting in links related to websites being usually displayed in order of relevance as determined by the search engine provider.

71.     On information and belief, in using search engines such as Google, Internet users enter the subject matter they are interested in, the companies they are looking for, or the goods they wish to buy. This allows search engines to provide avenues for targeted or contextual advertising, permitting companies to place their advertising in front of consumers.

72.     On information and belief, when an Internet user enters those keywords that have been successfully bid on in Google's search engine, the program generates links, known as "Sponsored Links," to the advertisers' websites. Sponsored links appear at the top and on the margins of Google's search-result pages and sometimes at the bottom margin. In many instances, the search results are designed so that the "Sponsored Link" display is inconspicuous, confusing and ambiguous so it is not apparent who "sponsors" these links and whether a sponsor of the link is associated in any way with the company that is the subject of the search.

73.     There is no "administrative" recourse available to trademark holders who are subjected to improper uses of their marks in the Adwords service.  Google's own written policy expressly states as follows: "Google will not investigate or restrict use of trademark terms in keywords, even if a trademark complaint is received."

74.     As a result of Tuff Tanks' wrongful actions, in recent months, when an Internet user conducted a search by entering one or more of the Titan Marks, certain of Titan's product names, and/or certain of Titan's product numbers, or variations thereof, in Google's search engine,

*Tuff Tanks'* advertising and/or link to its website was prominently displayed. Accordingly, on information and belief, Tuff Tanks' use of the Titan Marks, Titan product names, and Titan product numbers in order to trade on Titan's goodwill resulted in consumer confusion and diverted users away from Titan's website and, instead, to *Tuff Tanks'* website.

75.     In addition to harming Titan's reputation and the value of the Titan Marks, Tuff Tanks has, on information and belief, realized and continues to realize profits and other benefits rightfully belonging to Titan.

<strong><u>Resulting Confusion in the Marketplace</u></strong>

76.     As a consequence of Tuff Tanks' unlawful, improper and unfair practices, there has been confusion in the market as to the source, sponsorship or affiliation of Tuff Tanks' inferior aftermarket fuel tanks.

77.     Indeed, Tuff Tanks' unlawful, improper and unfair practices have had such an impact, and Tuff Tanks' knockoff aftermarket fuel tanks are so similar to Titan's aftermarket fuel tanks, that several Titan customers, prospective customers and others in the industry have been confused, leading them inquire as to whether the Tuff Tanks aftermarket fuel tanks are in fact Titan aftermarket fuel tanks being sold under a different brand.

78.     On information and belief, there are numerous customers, prospective customers, dealers and retailers who have been and continue to be confused as to the source of Tuff Tanks' inferior aftermarket fuel tanks.

<strong><u>COUNT I</u></strong><br><strong>Trademark Infringement and Unfair Competition</strong><br><strong>Lanham Act, 15 U.S.C. § 1125(a)</strong>

79.     Titan incorporates by reference and realleges, as if fully set forth herein, the foregoing paragraphs 1 through 78, inclusive.

80.     Titan owns trademark rights in the Titan Marks for aftermarket fuel tanks.

COMPLAINT - 14

81.     Tuff Tanks' use in interstate commerce of the Titan Marks – namely, the TITAN, TITAN FUEL TANKS, TITAN TOUGH, and TITAN XXL FUEL TANKS marks or variations thereof – as keywords in connection with the promotion, advertisement and sales of its competing aftermarket fuel tanks in Google's Adwords service, constitutes trademark infringement and unfair competition with regard to the Titan Marks.  Such uses by Tuff Tanks are likely to cause confusion, mistake and/or deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan.

82.     Tuff Tanks' use of the TUFF TANKS mark in interstate commerce for aftermarket fuel tanks constitutes trademark infringement and unfair competition because such conduct is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan, which has extensively used and generated considerable goodwill in connection with its TITAN TOUGH mark.

83.     Tuff Tanks' use of the XXXL FUEL TANKS mark in interstate commerce for aftermarket fuel tanks constitutes trademark infringement and unfair competition because such conduct is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan, which has extensively used and generated considerable goodwill in connection with its TITAN XXL FUEL TANKS mark.

84.     Titan has no control over the nature and quality of the goods and services offered by Tuff Tanks in trading off the Titan Marks, and Titan's reputation and goodwill will be damaged and the value of Titan Marks jeopardized by Tuff Tanks' continued infringements as alleged above. Because of the likelihood of confusion between the parties' marks, any defects, objections, or faults found with Tuff Tanks' infringing goods and services would negatively reflect upon and injure the reputation that Titan has established for its goods and services.

85.     As a direct result of Tuff Tanks' intentionally wrongful conduct, Tuff Tanks continues to cause Titan irreparable harm and has been unjustly enriched by its unlawful conduct.

## COUNT II
### Trade Dress Infringement and Unfair Competition
### Lanham Act, 15 U.S.C. § 1125(a)

86.     Titan incorporates by reference and realleges, as if fully set forth herein, the foregoing paragraphs 1 through 85, inclusive.

87.     The Titan Trade Dress, as described herein, is distinctive because it has acquired secondary meaning and therefore serves a source-identifying role.

88.     The Titan Trade Dress, as described herein, is nonfunctional.

89.     Tuff Tanks' manufacture and sale of the knockoff products, as identified herein, constitutes infringement of, and unfair competition with regard to, the Titan Trade Dress because such conduct is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan.

90.     Titan has no control over the nature and quality of the goods and services offered by Tuff Tanks in trading off the Titan Trade Dress, and Titan's reputation and goodwill will be damaged and the value of the Titan Trade Dress will be jeopardized by Tuff Tanks' continued infringements as alleged above. Because of the likelihood of confusion between the parties' product designs, any defects, objections, or faults found with Tuff Tanks' infringing goods and services would negatively reflect upon and injure the reputation that Titan has established for its goods and services

91.     As a direct result of Tuff Tanks' intentionally wrongful conduct, Tuff Tanks continues to cause Titan irreparable harm and has been unjustly enriched by its unlawful conduct.

## COUNT III
### False Advertising
### Lanham Act, 15 U.S.C. § 1125(a)

4820-2807-1470 v8

92.     Titan incorporates by reference and realleges, as if fully set forth herein, the foregoing paragraphs 1 through 91, inclusive.

93.     Titan has expended a significant amount of money and effort in promoting and marketing its aftermarket fuel tanks for sale in the United States, including in developing goodwill associated with the products, the Titan Marks, and the Titan Trade Dress.

94.     Tuff Tanks advertises and promotes its knockoff aftermarket fuel tanks in competition with Titan's aftermarket fuel tanks.  On information and belief, Tuff Tank plans to continue with and to expand its marketing and promotional efforts.

95.     Tuff Tanks' marketing and advertising of its knockoff aftermarket fuel tanks, as alleged in greater detail above, is false, misleading, deceptive and/or confusing, and likely to induce the consuming public into falsely believing the following representations, among others: (a) that Tuff Tanks' knockoff Ford Crew Cab Short Bed aftermarket fuel tank has an actual capacity of at least 55 gallons; (b) that its knockoff Ford Crew Cab Long Bed aftermarket fuel tank has an actual capacity of at least 70 gallons; and (c) that the concept of the aftermarket high-capacity fuel tank originated with Tuff Tanks.

96.     As a direct result of Tuff Tanks' intentionally wrongful conduct, Tuff Tanks continues to cause Titan irreparable harm and has been unjustly enriched by its unlawful conduct.

## COUNT IV
## Common Law Trademark Infringement

97.     Titan incorporates by reference and realleges, as if fully set forth herein, the foregoing paragraphs 1 through 96, inclusive.

98.     Titan owns trademark rights in the Titan Marks for aftermarket fuel tanks.

99.     Tuff Tanks' use in interstate commerce of the Titan Marks – namely, the TITAN, TITAN FUEL TANKS, TITAN TOUGH, and TITAN XXL FUEL TANKS or variations thereof

– as keywords in connection with the promotion, advertisement and sales of its competing aftermarket fuel tanks, in Google's Adwords service, constitutes trademark infringement and unfair competition with regard to the Titan Marks.  Such uses are likely to cause confusion, mistake and/or deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan.

100.    Additionally, Tuff Tanks' use of the TUFF TANKS mark in interstate commerce for aftermarket fuel tanks constitutes trademark infringement and unfair competition because such conduct is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan, which has extensively used and generated considerable goodwill in connection with its TITAN TOUGH mark.

101.    Tuff Tanks' use of the XXXL FUEL TANKS mark in interstate commerce for aftermarket fuel tanks constitutes trademark infringement and unfair competition because such conduct is likely to cause, and has caused, confusion, mistake, and deception as to the affiliation, connection, or association of Tuff Tanks' products and business activities with Titan, which has extensively used and generated considerable goodwill in connection with its TITAN XXL FUEL TANKS mark.

102.    Titan has no control over the nature and quality of the goods and services offered by Tuff Tanks in trading off the Titan Marks, and Titan's reputation and goodwill will be damaged and the value of Titan Marks will be jeopardized by Tuff Tanks' continued infringements as alleged above. Because of the likelihood of confusion between the parties' marks, any defects, objections, or faults found with Tuff Tanks' infringing goods and services would negatively reflect upon and injure the reputation that Titan has established for its goods and services.

103.     As a direct result of Tuff Tanks' intentionally wrongful conduct, Tuff Tanks continues to cause Titan irreparable harm and has been unjustly enriched by its unlawful conduct.

### COUNT V
### Common Law Unfair Competition

104.     Titan incorporates by reference and realleges, as if fully set forth herein, the foregoing paragraphs 1 through 103, inclusive.

105.     Tuff Tanks' actions, as alleged above, constitute unlawful, unfair and fraudulent business practices in violation of Idaho common law.

106.     As a direct result of Tuff Tanks' intentionally wrongful conduct, Tuff Tanks continues to cause Titan irreparable harm and has been unjustly enriched by its unlawful conduct.

### PRAYER FOR RELIEF

WHEREFORE, Titan prays that the Court enter judgment against Tuff Tanks as follows:

1.     That the Court preliminary and permanently enjoin and restrain Tuff Tanks from directly or indirectly:

a)     using trademarks or trade dress in connection with the advertisement, promotion, or sale of goods or services that imitate or simulate Titan's trademarks or trade dress;

b)     performing any actions or using any trademark, trade dress, words, names, styles, titles, or product designs that are likely to cause confusion or mistake, or to deceive; or to otherwise mislead consumers into believing that Tuff Tanks is affiliated with or associated with, or under the supervision or control of Titan, or that the goods or services originate with Titan; or are likely in any way to lead consumers to associate Tuff Tanks with Titan; and

4820-2807-1470 v8

c)      using any trade practices whatsoever, including those complained of in this Complaint, that tend to unfairly compete with or injure Titan, its business and the goodwill appertaining thereto;

2.      That the Court award compensatory damages against Tuff Tanks and in favor Titan on Counts I, II, III, IV and V, in an amount to be proved at trial;

3.      That the Court award treble damages against Tuff Tanks and in favor of Titan pursuant to 15 U.S.C. § 1117 on Counts I, II, and III, in a base amount to be proven at trial;

4.      That the Court award Titan its reasonable attorneys' fees on Counts I, II, and III under 15 U.S.C § 1117;

5.      That the Court award Titan its reasonable attorneys' fees on Counts IV and V;

6.      That the Court award Titan its reasonable costs on Counts I, II, III, IV and V; and,

7.      That the Court grant Titan such other and further relief as it deems to be just and proper.


DATED THIS 11th day of March, 2016.

PARSONS BEHLE & LATIMER


By */s/ Kennedy K. Luvai*
___
    Kenned K. Luvai
Attorneys for Plaintiff Supertanks, LLC dba Titan
Fuel Tanks

COMPLAINT - 20

## <u>DEMAND FOR JURY TRIAL</u>

Titan hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of

Civil Procedure 38.

DATED THIS 11th day of March, 2016.

PARSONS BEHLE & LATIMER


By: <u>*/s/ Kennedy K. Luvai*</u>
Kennedy K. Luvai
Attorneys for Plaintiff Supertanks, LLC dba Titan
Fuel Tanks

COMPLAINT - 21